MARY McDONALD, FANNIE BYRD, et als. v. ELLA J. McLENDON et als.

(Filed 21 March, 1917.)

**1. Appeal and Error—Court's Discretion—Recall of Witness—Consent.**

Where a party has rested his case it is within the unreviewable discretion of the trial judge, in the absence of abuse thereof, to permit him to recall a witness to testify as to certain facts, which had been ruled out on objection and again offered.

**2. Appeal and Error—Court's Discretion—Presumptions.**

Where there is doubt whether the trial judge refused to permit a witness, after the party introducing him had rested his case, from again going on the stand, in his discretion or as a matter or law, the remedy is by *certiorari* or remand; to have the doubt reversed. The Court finds in this case that the judge did exercise his discretion.

**3. Wills—Devisavit Vel Non—Mental Capacity—Undue Influence—Beneficiaries—Declarations.**

Upon a trial of *devisavit vel non* of a will, naming two or more beneficiaries, wherein the issues, submitted without objection, and the contentions of the parties relate solely to its valdity as a whole, declarations of one of the devisees in favor of the caveator, as to the mental capacity of the testator, or undue influence practiced upon him, would be prejudicial to the rights of the other beneficiary or beneficiaries, and incompetent.

**4. Appeal and Error—Conflict—Record—Recall of Witness—Court's Discretion.**

Where in an action of *devisavit vel von* it is contended, on appeal, that a certain witness was a caveator in the action and should have been permitted to testify after the propounder had rested his case, and that the refusal of the trial judge was not in his discretion in permitting the propounder to recall him to the stand after he had already testified, and it is suggested incidentally in the appeal bond, case on appeal, and brief that the witness was a caveator, but it otherwise appears in the record, the record will control.

**5. Appeal and Error—Wills—Devisavit Vel Non—Single Issue—Objections and Exceptions.**

Where an action *devisavit vel von* has been tried without objection, as to the validity of the will as a whole, the Supreme Court will not order another trial upon separate issues as to the validity or invalidity of several devises.

McDonald v. McLendon.

**6. Wills—Undue Influence—Evidence—Instructions.**

> *Held*, in this action of *devisavit vel von*, old age, bad health, and weakness of mind were circumstances to be considered by the jury upon the question of undue influence by the son of the testator, but practically afforded no evidence of fraud; and the charge of the court, construed as a whole, was not erroneous.

CIVIL ACTION, tried before *Bond, J.,* and a jury, at January Special Term, 1917, of LEE.

This is a caveat to the will of M. C. Talbert, which was executed 1 September, 1916. Issues were submitted to the jury and answered, as follows:

1. Was the paper-writing propounded, dated 1 September, 1916, executed by M. C. Talbert according to the formalities of law required to make a valid last will and testament?

2. At the time of signing and executing said paper-writing, did said M. C. Talbert have sufficient mental capacity to make and execute a valid last will and testament?

3. Was the execution of said paper-writing propounded in this case procured by undue influence, as alleged?

4. Is the said paper-writing, referred to in issue 1, propounded in this case, the last will and testament of M. C. Talbert, deceased?

And the jury having answered the first issue "Yes"; the second issue, "Yes"; the third issue "No," and the fourth issue, "Yes."

The caveators proposed to ask their witness, W. A. McDonald, the following questions:

"1. Did you ever hear McLendon (husband of devisee, Mrs. McLendon) say anything about Mr. Talbert's mind?

"2. Did you ever hear Mrs. McLendon, the daughter of Mr. Talbert, say anything about the old man's (M. C. Talbert's) mental condition while the old man was living?

"3. What did you hear Mrs. McLendon, his daughter and chief beneficiary under the will, say in regard to his mental condition?"

The court sustained objections of the propounders to the questions, and caveators excepted.

There were only two beneficiaries named in the will, Mrs. Fannie Byrd and her sister, Mrs. McLendon, they being the daughters of the testator. He gave Mrs. Byrd $500 and to Mrs. McLendon he gave the residue of his estate, reciting in the will that he had theretofore given to Mrs. Byrd $500 and to each of his children, Thomas Talbert, Mrs. Mary McDonald, and Mrs. McLendon, $1,000. It is further stated that he had given Mrs. McLendon the largest share of the estate because she had lived with him at his home "and provided for his personal needs." At the close of the testimony of the propounders offered in rebuttal of

that of the caveators, the latter introduced their witness, W. A. Mc-Donald, and proposed to ask him the same questions which had already been excluded by the court, Mrs. Byrd stating in open court, through her counsel, that "she waived all objection to the evidence," which was offered by the caveators, as above set forth, and excluded by the court, and agreed that it might be introduced as affecting the validity of the will, and caveators asked that they be permitted to recall the witness, W. A. McDonald, in order that this evidence might be heard. The court refused to do so, and caveators excepted.

There was an exception to the charge which will be noticed here-after.

Judgment was entered upon the verdict, and the caveators appealed.

*Manning, Kitchin & Gavin for plaintiffs.*
*Seawell & Milliken for defendants.*

WALKER, J., after stating the case: Whether the judge would allow the witness, W. A. McDonald, to be recalled, was a matter entirely within his discretion and when it is exercised, without any gross abuse, which is not even suggested here, we will not review it. The propound-ers opened the case by introducing their evidence, or so much as they thought sufficient to sustain their side of the issues. The caveators were then given ample opportunity to put in their evidence and all of it, including that which they afterwards proposed to introduce. The pro-pounders then introduced evidence in rebuttal and closed their case. The privilege, at this stage of the trial of recalling a witness for the purpose of offering testimony could not be exercised without the consent of the judge, which he might grant or withold at his discretion. The case of *In re Will of Andrew Abee,* 146 N. C., 273, is so directly applicable that we content ourselves with this single citation. That was a contest as to the validity of a will, and the caveators requested of the court that they be permitted to recall a witness for further examination. The request was denied, and this Court said in affirming the ruling: "Our decisions are to the effect that this matter of recalling witnesses for further examination is in the discretion of the judge presiding at the trial, and his action in this respect is not open to review. *Sutton v. Walters,* 118 N. C., 495; *Olive v. Olive,* 95 N. C., 485." This record shows that the judge merely refused to call the witness, W. A. McDonald, to the stand for the purpose of reopening a closed case and reversing his form-er ruling by allowing the questions to be answered. If there was any doubt or obscurity as to the reason for his ruling, the proper method would have been to make the matter clear by a *certiorari* or remand, so that the judge could state the fact, that is, whether he exercised his

discretion merely, or decided as he did for want of power to rule otherwise. *Holton v. Lee, ante,* p. 105. It appears that the judge thought the caveators had sufficient opportunity to make their request before they closed their case, and that it was too late then for it to be considered, or for the case to be reopened for any purpose; but whatever may have been his reason, as he was merely exercising his discretion, his ruling must be left as he made it.

It is hardly to be supposed, after so many decisions to the contrary and after the law has been so thoroughly settled in that respect, that the judge would decide he had no power to recall the witness. If, therefore, any fair doubt existed as to the nature of the ruling, we would still incline to the view that the judge exercised his discretion. If he had said that he denied the motion for a want of power, a different question would arise.

*Pannell v. Scoggin,* 53 N. C., 408, merely holds that where an executor was made competent as a witness in a will contest, it makes no difference whether he appears on the record as plaintiff or defendant. It has no bearing on this case. Mrs. Byrd was not the witness, but McDonald was. The question here is, was she a beneficiary at the time the first questions were asked, and a respondent? whether her name appears in the record on one side of the case or the other.

This brings us to the other question of evidence, whether the testimony of W. A. McDonald was competent. There were two devisees or legatees in the will, Mrs. Byrd and Mrs. McLendon. The offer was to prove that Mrs. McLendon had once said that her father's mind had weakened, or failed, from the use of medicine, and that he could hardly recollect anything. It appears, therefore, that the effort was to attack the whole will and to invalidate it as a whole. This could not be done under the decision in *Linebarger v. Linebarger,* 143 N. C., 229, and *In re Fowler,* 156 N. C., 340, as the declaration of Mrs. McLendon would, of course, affect the other beneficiary, and, as said in those cases, this would be manifestly unjust. The issues here were so drawn as to present the single question as to the validity of the will, as a whole, and not as to the validity of the gift to Mrs. McLendon.

It is suggested, incidentally, in the appeal bond, case on appeal, and brief, that Mrs. Byrd is a caveator; but this must be an inadvertence, as the record shows clearly that she was not, Mr. and Mrs. McDonald being the only caveators, and this was the state of the record when the issues were made up and the case tried. There is no order of the court making her a party to the caveat, nor does any application for that purpose appear in the record. On the contrary, she is described as a respondent, the citation having issued against Ella J. McLendon, Fannie Byrd, and T. W. Talbert, at the request of the caveators of the will

of Mrs. M. C. Talbert. It is apparent that she was not a party when this evidence was first offered, and if she became a party afterwards, or at any stage of the proceedings, it should appear in the record. The motion of the caveators, after the evidence was closed, to recall the witness W. A. McDonald implies that she was not a caveator when the first questions were asked. When the record and case conflict, the former controls. *Threadgill v. Comrs.,* 116 N. C., 616, 625. If the evidence, as offered in this case, was competent at all, under the principles stated and discussed, with citation of authority, in *Linebarger v. Line-barger, supra,* it is certainly not competent, under the circumstances, as, when it was tendered, it would, on its face, have been prejudicial to the legatee other than Mrs. McLendon. If the waiver of Mrs. Byrd made the evidence competent, it should have been entered in apt time and regular order.

It was suggested at the hearing in this Court that the evidence was competent on the question of undue influence, but that can invalidate a will as a whole just as much as a want of mental capacity, and it was submitted in that way to the jury. It is also suggested that the legacy to Mrs. McLendon might have been considered as a separate gift and set aside upon the ground of undue influence or fraud practiced by her, without annulling the entire will. The answer is, that this view, if allowable, was not suggested or properly raised, and the issues, submitted without objection, did not present any such aspect of the case, and there is no such exception; but the inquiry was as to the validity of the whole will. *Gash v. Johnson,* 28 N. C., 289. The judge could have submitted the general issue *devisat vel non,* or a special issue, so that the jury might pass upon the validity of the whole will or of any part of it. It was said in *Gash v. Johnson, supra,* at p. 291: "The court ordered an issue of *devisavit vel non* to be made up and submitted to a jury. The issue which was made up under the order of the court was probably framed in such a manner as to confine the response of the jury (will or no will) to the said paper *in toto,* whereas the court might have directed the issue to have been drawn up specially for the jury to find whether the paper-writing propounded as the last will of Reuben Johnson, deceased, was in fact his will, or any part of it, and which part. Frequently this special mode of framing the issue will be found most advisable. Then the jury may respond that one or more of the legacies or devises mentioned in the paper is or are not any part of the last will; and that the residue of the paper-writing is the last will of the supposed testator," citing *Trembistown v. Alton,* 1 Dow and Clark, N. T., 95. And finally it is argued that a separate issue should be ordered as to the undue influence exerted by Mrs. McLendon in obtaining her own legacy, as was done in *Linebarger's case.* This is an-

McDonald *v.* McLendon.

swered by what we have already said, viz., that there was no such request made, and, besides, in the *Linebarger case* there was a new trial, and the court did not order such a separate issue, but merely stated that "it could see no reason why a special issue might not be submitted to the jury as to the interest of Hosea." It was left to the judge to do so on the next trial.

We cannot sustain the exception to the charge. When the instruction to which exception was taken is read in connection with the others given, several of them at the request of caveators, there was no error in stating the law of the case to the jury. The charge was perhaps not as strong as it might have been for the propounders. In the case of *In re Abee, supra,* where is was contended that there was no evidence of undue influence, *Judge Hoke* said: "It is established with us that in order to avoid a will on this ground the influence complained of must be controlling and partake to some extent of the nature of fraud. *Marshall v. Flinn,* 49 N. C., 199; *Wright v. Howe,* 52 N. C., 412; *Paine v. Roberts,* 82 N. C., 451. As held in *Wright v. Howe, supra:* 'The influence which destroys the validity of a will is a fraudulent influence, controlling the mind of the testator so as to induce him to make a will which he would not otherwise have made.' It would serve no good purpose to go into any extended or detailed statement of the testimony. We have carefully read and considered it as given in the case on appeal, and we fully concur with the trial judge that there is no evidence tending to show undue influence, and are of opinion that the judgment establishing the validity of the will should be affirmed." The record does not purport to set out all of the evidence; but if that which was omitted is no stronger in character than the part inserted, there was, perhaps, enough to carry the case to the jury; but it did not furnish any clear, or decisive, indication of undue influence. Old age, bad health, and weakness of mind are circumstances to be considered upon such an issue, but there is practically no evidence of actual fraud or that Mrs. McLendon took advantage of her father's condition to unduly overcome his will or subject it to her own. The case would hardly have been any stronger with her declaration as to his mental condition super-added, as there already was full evidence on this phase of the case.

We find no error in the record.

No error.